```
              UNITED STATES DISTRICT COURT
                 DISTRICT OF NEW JERSEY
```

```
JOSEPHUS T.Y. NYEMA, SR.,      :   CIVIL ACTION NO. 04-506 (MLC)
                               :
       Plaintiff,              :        MEMORANDUM OPINION
                               :
    v.                         :
                               :
COUNTY OF MERCER, et al.,      :
                               :
       Defendants.             :
                               :
```

**COOPER, District Judge**

The defendants move pursuant to Federal Rule of Civil Procedure ("Rule") 56(c) for summary judgment as to the claims asserted against them for violations of Title VII of the Civil Rights Act of 1964 ("Title VII"), the Age Discrimination in Employment Act ("ADEA"), and the Americans with Disabilities Act ("ADA"). (Dkt. entry no. 37.) The Court, for the reasons stated herein, will grant the motion.

## BACKGROUND

Defendant County of Mercer ("Mercer") hired Josephus T.Y. Nyema, Sr. ("Nyema") to be a corrections officer on September 16, 1996. (Compl., at ¶ 13.) Nyema sought the positions of Director of Public Safety, Warden, and member of the Mercer County Emergency Response Team ("MERT") once he was employed by Mercer. (Defs. Br., at 1.) He did not attain any of these positions. (Id.)

Nyema has had a series of disciplinary problems during the course of his employment. (Id.) He was suspended at least four

times for (1) refusing to work a post assignment, (2) missing scheduled doctor's appointments related to a workers' compensation claim, (3) sleeping on duty, and (4) being indicted in the Superior Court of New Jersey on charges of fraud, and falsifying and tampering with records.  (Defs. Br., at 1-2; Defs. Ex. C, 5-13-03, Final Admin. Action of the Merit Sys. Bd.; Defs. Ex. E, 7-10-02 Stip. of Settlement; Defs. Ex. G2, 4-7-03, Preliminary Notice of Disc. Action; Defs. Ex. I, 1-25-05, Hearing Officer's Report.)

His final suspension, which followed his indictment, was indefinite pending the outcome of the criminal case against him. (Defs. Ex. I, 1-25-05, Hearing Officer's Report.)  Nyema was convicted of forgery and tampering with records on May 19, 2005. (5-20-05, "Ex-Liberian Civic Leader Guilty," The Trenton Times, at A4.)  Mercer terminated Nyema's employment on October 26, 2005, as a result of the conviction.  (10-26-05, N.J. Super. Ct. Order, New Jersey v. Nyema, No. 04-10-0715.)[1]

Nyema sought and received notices of the right to sue from the Equal Employment Opportunity Commission ("EEOC") on November

---

[1] Nyema says he was terminated effective April 7, 2003 following the incident when he was found sleeping on the job. (Pl. Br., at 5.)  The Preliminary Notice of Disciplinary Action, related to the incident, indicates Nyema was suspended without pay effective April 7. 2003.  (Pl. Ex. G2.)  The settlement agreement indicates Nyema accepted a ninety-day suspension in exchange for a plea of guilt on the charges of sleeping on duty and neglect of duty.  (Id.)

10, 2003, and January 16, 2004.  (Pl. Ex. Q, 11-10-03, & 1-16-04, Notice of the Right to Sue.)  The notices gave Nyema "the right to institute a civil action under Title VII of the Civil Rights Act of 1964."  (Id.)  Nyema brought this action on February 9, 2004, alleging that Mercer and multiple Mercer employees violated his rights pursuant to Title VII, the ADEA, and the ADA.  (Compl.)  Nyema alleges that he was treated differently than other employees, and denied employment opportunities because of his race, color, national origin, age, and disability.  (Id.)  All the defendants have moved for summary judgment as to all the claims asserted against them.  (Dkt. entry no. 37.)

## DISCUSSION

The defendants argue that they are entitled to summary judgment because Nyema (1) was not subject to a hostile work environment, (2) has not demonstrated the defendants' intent to treat him differently, (3) was denied a MERT position because of physical injury, not age, and (4) is not disabled for purposes of the ADA.  (Defs. Br., at 9, 11, 13-14.)

Nyema argues that summary judgment is not appropriate because (1) genuine issues of material fact exist, (2) he was treated differently than other employees found sleeping on the job because of his national origin, and (3) he was denied jobs because of his age and disability.  (Pl. Br., at 6-8.)

**I. Standard for Summary Judgment**

Rule 56(c) provides that summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." The party moving for summary judgment bears the initial burden of showing that there is no genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once the summary judgment movant has met this prima facie burden, the nonmovant "must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). A nonmovant must present actual evidence that raises a genuine issue of material fact and may not rely on mere allegations. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986).

The Court must view the evidence in the light most favorable to the nonmovant when deciding a summary judgment motion. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). At the summary judgment stage, the Court's role is "not . . . to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Anderson, 477 U.S. at 249. "By its very terms, this standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly

supported motion for summary judgment; the requirement is that there be no <u>genuine</u> issue of <u>material</u> fact." <u>Id.</u> at 247-48 (emphasis in original). A fact is material only if it might affect the action's outcome under governing law. <u>Id.</u> at 248. "[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." <u>Id.</u> at 249-50 (citations omitted).

**II. Nyema's Claims**

   **A. Title VII**

Nyema, an "American-Liberian", alleges that the defendants treated him less favorably than the Caucasian corrections officers. (Compl., at 3.) Nyema claims, in particular, that he was treated adversely when he (1) filed in-house grievances, (2) was disciplined, (3) was found sleeping on the job, and (4) was passed over for the position of Warden. (<u>Id.</u> at 9, 12, 13.)

Title VII makes it unlawful for an employer to "fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). To establish a prima facie case for discrimination, the plaintiff must show that

(1) the plaintiff (a) belonged to a protected class, (b) applied and was qualified for the job for which the employer was seeking applicants, and (c) was rejected despite being qualified, and (2) after rejecting the plaintiff, the position remained open and the employer continued to seek applicants with the plaintiff's qualifications. McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973). The burden shifts to the employer to provide a legitimate, nondiscriminatory reason for the adverse employment action, once a plaintiff has established a prima facie case. Id. To prevail, the plaintiff must then prove that the employer's reason was pretextual. St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 507-08 (1993).

Title VII prohibits retaliation and discrimination by an employer for any acts taken by the employee in opposition to an employment practice made unlawful by Title VII. 42 U.S.C. § 2000e-2(1). To demonstrate a claim for retaliation a plaintiff must show (1) the plaintiff engaged in activity protected by Title VII, (2) the employer took adverse employment action against the plaintiff, and (3) there was a causal connection between participation in the activity and the adverse employment action. Robinson v. City of Pitt., 120 F.3d 1286, 1299 (3d Cir. 1997). Discharge, refusal to hire, and any other actions that alter an employee's "compensation, terms, conditions, or

6

privileges of employment" qualify as adverse employment actions. Id. at 1300.

The defendants are entitled to summary judgment as to Nyema's Title VII claims, counts 1-4 and 7-10 of the complaint, because Nyema has not raised a triable issue of fact in response to the defendants' showing they did not discriminate against him on the basis of his color, race, or national origin.  Nyema was neither qualified for the positions he did not get, nor was there a causal connection between Nyema's in-house grievances and complaints, and the defendants' adverse employment actions.  The disciplinary actions taken against Nyema, and the suspensions that followed were the result of Nyema's failure to carry out his duties.[2]

Nyema was disciplined for refusal to work the post assignment given to him by a supervisor, failure to attend

---

[2] The complaint, read liberally, alleges that the defendants violated Title VII because their actions towards Nyema constituted harassment, and created a hostile work environment. (Compl., at Counts 1, 3-4, 8-9.)  To demonstrate a claim based on a hostile work environment, a plaintiff must show (1) the plaintiff suffered intentional discrimination as a member of a protected class, (2) the discrimination was pervasive and regular, (3) the discrimination detrimentally affected the plaintiff, (4) a reasonable person of the same protected class in that position would have been detrimentally affected by the discrimination, and (5) respondeat superior liability. West v. Phila. Elec. Co., 45 F.3d 744, 753 (3d Cir. 1995).  Claims based on this theory fail for the same reasons as do those based on retaliation.  Intentional discrimination on the part of the defendants is lacking because Nyema's discipline was a result of his failure to carry out his duties.

doctor's appointments, sleeping on the job, and being indicted. (Defs. Br., at 1-2.)  Prior to each suspension, Nyema received notices of disciplinary action that advised him of his right to a departmental hearing.  (Pl. Ex. N.)  In each situation, either a "Major Disciplinary Hearing" was held, or Nyema and the defendants reached a settlement that was signed by both parties. (Defs. Exs. B, C, E, G, & I.)  Nyema's conduct in each situation was found to violate a Mercer rule, policy or procedure, and justified discipline.  (Id.)

Nyema argues that other officers found sleeping on the job were not disciplined, and thus he suffered disparate treatment. (Pl. Br., at 7.)  The notices of disciplinary action submitted by Nyema, however, indicate that other officers charged with sleeping on the job were suspended.  (Pl. Ex. N.)  Nyema points out that the other officers were only suspended for thirty days, while he was suspended for ninety days.[3]  The sixty-day difference, however, given Nyema's history of disciplinary

---

[3] Nyema alleges that three other officers were charged with sleeping on duty, and only sentenced to thirty-day suspensions. (Pl. Br., at 5.)  The only documents submitted that confirm that the other officers were suspended for thirty days are a Final Notice of Disciplinary Hearing as to Officer Arthur Ahr only, and a newspaper article, whose source and date of publication cannot be identified, that says Mercer was hoping to fire three guards for sleeping on the job, and to suspend two guards for thirty days for the same actions.  (Pl. Ex. N.)  The article indicates that cases are looked at on an individual basis and that an officer might be fired in the situation if the officer had prior disciplinary matters.  (Id.)

problems, is not so disparate as to raise an inference of discriminatory intent.[4]

Mercer's decision to neither interview Nyema for the position of Warden, nor promote him to the position of Director of Public Safety cannot form the basis of Nyema's Title VII claims.  (See Compl., at Count 9.)  Mercer considered Nyema's resume when interviewing candidates for the Warden position, and decided to interview applicants with more experience.  (Pl. Ex. C.)  Nyema has not established a prima facie case because he has failed to demonstrate that he was qualified for the position, or that the applicants were equally qualified (they were more qualified by virtue of their experience).  Even if he had, however, he has not shown that Mercer's reason was pretextual.  As to the position of Director of Public Safety, it was abolished upon the retirement of the prior director.  (7-25-05, Certif. of Victoria Rivera-Cruz.)

---

[4] None of the counts of the complaint are based exclusively on Mercer's failure to discipline other officers sleeping on the job.  It should be noted, however, that in the settlement agreement reached between Nyema and Mercer on April 19, 2004, Nyema agreed to "waive all claims against Mercer County with regard to the matter [the sleeping incident]," and acknowledged that "this agreement shall constitute full and final resolution of all issues from the charge in question.  The parties agree to forebear any further appeal . . . in this or any forum."  (Defs. Ex. G2.)

**B. ADEA**

Nyema alleges that the defendants denied him a MERT position because of his age. (Compl., at Count 5.) Nyema, however, cannot proceed with his ADEA claim because he has not received notice of a right to sue pursuant to the ADEA. The ADEA provides, "[n]o civil action may be commenced by an individual under this section [the ADEA] until 60 days after a charge alleging unlawful discrimination has been filed with the Equal Employment Opportunity Commission." 29 U.S.C. § 626(d); cf. Douris v. Bucks County, No. 04-232, 2005 WL 226151, at *10 (E.D. Pa. Jan. 31, 2005) (holding that plaintiff could not proceed with his Title VII or ADEA claims because his notice of the right to sue was limited to civil actions brought pursuant to the ADA).

The right to sue notices Nyema received only provide him the right to sue pursuant to Title VII. (Pl. Ex. Q, 11-10-03 & 1-16-03, Notice of Right to Sue.) Nyema's age discrimination claim cannot be considered within the scope of Nyema's right to sue pursuant to Title VII because Title VII does not provide a cause of action for discrimination based on age. Cf. Santiago v. City of Vineland, 107 F.Supp.2d 512, 528 (D.N.J. 2000) (granting summary judgment as to Title VII race discrimination claim because it was not within the scope of the EEOC charge for discrimination based on disability). The defendants, therefore, are entitled to summary judgment as to Nyema's ADEA claim because

10

Nyema has failed to comply with the procedural requirements for filing such a claim.  Summary judgment, however, is also appropriate, absent the procedural shortcoming, because there is no genuine issue of material fact to sustain Nyema's ADEA claim.

The ADEA makes it unlawful for employers "to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age."  29 U.S.C. § 623(a)(1).  To recover, a plaintiff need not show that age was the only reason for the adverse employment decision, but must show that age was a determinative factor.  DeJoy v. Comcast Cable Commc'ns, Inc., 968 F.Supp. 963, 978-79 (D.N.J. 1997).  To establish a prima facie case for age discrimination, a plaintiff must prove that the plaintiff was (1) a member of the protected class, (2) discharged or not hired, (3) qualified for the job, and (4) replaced by a sufficiently younger person.  Showalter v. Univ. of Pitt. Med. Ctr., 190 F.3d 231, 234 (3d Cir. 1999).  The defendant has the burden to show that it had a legitimate, nondiscriminatory reason for the employment action taken, if the plaintiff establishes a prima facie case.  Id. at 235.  The plaintiff, then, has the opportunity to prove that the employer's reason is pretextual.  DeJoy, 968 F.Supp. at 980.

The defendants are entitled to summary judgment as to Nyema's ADEA claim because Nyema has not raised a triable issue of fact as to his qualification for a MERT position, or his replacement by a younger person in response to the defendants' prima facie showing of entitlement to relief.  Nyema was denied a MERT position because the Mercer County Physician, Dr. Chamain Austin ("Dr. Austin"), found that Nyema was not physically fit for the position.  (Defs. Ex. F, 10-31-02, Memo to Warden Archie Kline from Dr. Austin.)  Nyema had previously suffered a work-related back injury that required treatment by several specialists and physical therapy.  (Defs. Ex. F, 11-21-02, Ltr. to Nyema from Dr. Austin.)  Nyema, himself, acknowledged this injury in his MERT interview when asked if he had "any medical problems/physical ailments that would hamper [his] performance in training or during an emergency response."  (Pl. Ex. K, 9-1-02, MERT Interview.)  A member of MERT endures rigorous training, physical demands, and must carry equipment that weighs up to, and over thirty-five pounds.  (Pl. Ex. K, 10-05-02, Request for Medical Screening for MERT Applicants.)  Dr. Austin determined that the physical demands associated with MERT could exacerbate Nyema's previous back injury.  (Defs. Ex. F, 11-21-02, Ltr. to Nyema from Dr. Austin.)  Nyema, therefore, has failed to allege that he was qualified for a MERT position as required under Sholtis.

Failure to satisfy one element is sufficient to base a grant of summary judgment as to Nyema's ADEA claim. However, Nyema has also failed to allege that the MERT position was filled by a sufficiently younger person. Neither the complaint, nor Nyema's brief and reply, make any reference to who was chosen for the MERT job. Nat'l State Bank v. Fed. Reserve Bank, 979 F.2d 1579, 1582 (3d Cir. 1992) (if the party moving for summary judgment does not bear the burden on the underlying claim, it can point to the nonmovant's lack of showing).[5] Nyema has failed to raise a genuine issue of material fact as to elements of an ADEA claim. Therefore, the defendants do not bear the burden of providing a nondiscriminatory reason for their decision. If they were required, however, Dr. Austin's assessment that Nyema's back injury disqualified him from the job would suffice.

**C. ADA**

Nyema alleges that the defendants denied him a MERT position because of his disability. (Compl., at Count 6.) The defendants are entitled to summary judgment as to Nyema's ADA claim because

---

[5] Nyema is pro se and his pleadings must be construed broadly. However, nothing in the complaint or brief mentions who received a MERT position. Nyema is not unfamiliar with the court system and should be aware of the need to provide evidence on all the elements of the claims to prevail. See, e.g., Nyema v. IBI Secured Transp. Inc., No. 05-3999 (D.N.J. filed 8-10-05); Nyema v. City of Trenton, 2005 WL 1334623, No. 05-2324 (D.N.J. June 6, 2005); Nyema v. County of Mercer, No. 04-421 (D.N.J. closed 7-15-04); Nyema v. Garelick Co, No. 98-5421 (D.N.J. closed 4-7-99); Nyema v. D.B. Kelly Assoc., No. 93-5713 (D.N.J. closed 6-6-05).

Nyema has not secured the right to sue pursuant to the ADA from the EEOC.  "[A] party who brings an employment discrimination claims under Title I of the ADA must follow the administrative procedures set forth in Title VII of the Civil Rights Act of 1964, 42 U.S.C. 2000e-5."  Churchill v. Star Enter., 183 F.3d 184, 190 (3d Cir. 1999).  Nyema's notices give him the right to sue pursuant to Title VII only.  (See Pl. Ex. Q, 11-10-03 & 1-16-03, Notice of Right to Sue.)  His claim that he was discriminated against because of his disability cannot be brought pursuant to Title VII because Title VII does not provide a cause of action for such discrimination.  See Dawley v. Erie Indem. Co., No 03-3860, 100 Fed.Appx. 877, 883 (3d Cir. June 3, 2004) (recognizing that had the plaintiff brought an ADA claim, he would have failed to exhaust the claim because it was not within the scope of his EEOC filing for retaliation based on Title VII); cf. Antol v. Perry, 82 F.3d 1291, 1295-96 (3d Cir. 1996) (affirming grant of summary judgment as to the plaintiff's gender discrimination claim under Title VII because such discrimination was not within the scope of the plaintiff's EEOC complaint based on disability).  Summary judgment as to Nyema's ADA claim, therefore, is appropriate because Nyema has failed to meet the procedural requirements for such a claim.  The defendants, however, are also entitled to summary judgment because there is no genuine issue of material fact to sustain the ADA claim.

The ADA prohibits covered entities from "discriminat[ing] against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment."  42 U.S.C. § 12112(a).  A qualified individual with a disability is "an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires."  42 U.S.C § 12111(8).  A disability is:

>    (A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual;
>    (B) a record of such an impairment; or
>    (C) being regarded as having such an impairment.

42 U.S.C § 12102(2).  "The ADA does not apply to transient, nonpermanent conditions.  Temporary medical conditions do not constitute disabilities under the ADA."  DeJoy, 968 F.Supp. at 984 (internal cites and quotes omitted) (finding plaintiff was not disabled because he was only unable to work for four to five months); see also Colwell v. Suffolk County Police Dep't., 158 F.3d 635, 646 (2d Cir. 1998) (impairment that prevented police officer from working for seven months was temporary and not "substantially limiting").  "Almost any impairment may affect a

15

major life activity in some manner, [but] the ADA does not consider every impaired person to be disabled." Rector v. Sylvania, 285 F.Supp.2d 349, 355 (S.D.N.Y. 2003). Affecting a major life activity is different than substantially limiting a major life activity. Id.

The defendants are entitled to summary judgment as to Nyema's claim pursuant to the ADA because Nyema is not disabled as defined by the ADA. Nyema claims that he is disabled because he has a "physical impairment (to his low back)." (Pl. Br., at 7.) Nyema, however, does not articulate, nor is it obvious, how this impairment "substantially limits a major life activity." The complaint merely refers to "plaintiff's disability" with no mention of Nyema's back, and his brief only restates the statutory requirement without pinpointing a specific life activity that is restricted. (Compl., at Count 6; Pl. Br., at 8.) Nyema does, however, indicate that he is physically active by participating in sporting activities. (Pl. Ex. K, MERT Data Form.) This activity weighs against a determination that a life activity is impaired.

Working is considered a major life activity. However, to be considered "substantially limited" from working, Nyema must be restricted in his ability "to perform a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills, and abilities."

16

Mondzelewski v. Pathmark Stores, Inc., 162 F.3d 778, 783 (3d Cir. 1998); see also 29 C.F.R. § 1630.2(j)(3).  Neither in the complaint, nor his brief, does Nyema indicate a broad range of jobs from which he is precluded.  The only job mentioned in the ADA claim is the MERT position. (Compl., at Count 6.)  The inability to perform one job does not raise a genuine issue of material fact sufficient to deny summary judgment.  See Tice v. Centre Area Transp. Auth., 247 F.3d 506, 513 (3d Cir. 2001) (finding no disability and granting summary judgment because plaintiff did not present any evidence that his back injury interfered with any jobs besides bus driving).

    Nyema's back injury also does not qualify as a disability under the ADA because there is no indication that the impairment is permanent.  Dr. Austin determined that Nyema was still "in the healing process," and that "at this time" additional physical demands would exacerbate the injury.  (Defs. Ex. F, 11-21-02, Ltr. to Nyema from Dr. Austin.)  Dr. Austin also stated "I am willing to reassess your [Nyema's] physical fitness to participate in the program [MERT] in six months."  (Id.)  The statements are indications of the temporary nature of Nyema's impairment.  The Court, considering both the quality of the evidence Nyema has presented, and the absence of evidence, finds that Nyema has not raised a triable issue of fact as to his

17

disability in response to the defendants prima facie showing of entitlement to relief.

## CONCLUSION

The Court, for the reasons stated supra, will grant the motion for summary judgment by the defendants.  An appropriate order and judgment will be issued.


                                        s/ Mary L. Cooper
                                      **MARY L. COOPER**
                                      United States District Judge